# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

PENN ENGINEERING & MANUFACTURING CORP.,

    Plaintiff,

vs.

DONGGUAN FENGGANG PINCONN HARDWARE FACTORY,

    Defendant.

2:17-cv-02679-RJC-PAL

**ORDER**

This case arises from allegations of trademark and patent infringement. Now pending before the Court is a motion for default judgment against Defendant Dongguan Fenggang Pinconn Hardware Factory ("Pinconn"). (Mot. Default J., ECF No. 12.) For the reasons given herein, the Court grants the motion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Penn Engineering & Manufacturing Corp. ("PEM") is a 75-year-old company specializing in the design, manufacture, and sale of metal fasteners. PEM is the owner of numerous trademarks and patents in relation to its business, including many registered marks which derive directly from the acronym "PEM" (e.g., PEMFLEX, PEMHEX, PEMSERT, etc.). (Compl. 6–12, ECF No. 1; Mot. Default J. 2–5, ECF No. 12.) In November 2015, PEM filed a trademark and patent infringement action in federal court in the Eastern District of Pennsylvania,

against three Chinese entities: Pemco Hardware, Inc., Dongguan Fenggang Pemco Hardware Factory, and Shenzhen Pemco Fastening Systems Co., Ltd. ("the Pennsylvania Action"). *See Penn Eng'g & Mfg. Corp. v. Pemco Hardware, Inc.*, No. 2:15-cv-6277-GJP (E.D. Pa. filed Nov. 23, 2015). On February 19, 2016, the clerk of court entered default against all three defendants for their failure to appear, plead, or otherwise defend in the case.

On March 9, 2016, the Pennsylvania court granted a preliminary injunction against the Pemco defendants ordering them to discontinue their infringing activities. Thereafter, according to PEM, the defendants "shut down their website, closed their California warehouse, and seemingly disappeared from U.S. commerce." Mot. Enforce Prelim. Injun. at 2, *Penn Eng'g v. Pemco*, No. 2:15-cv-6277-GJP (E.D. Pa. Nov. 6, 2017), ECF No. 18-1. However, on or around October 13, 2017, PEM discovered that "the defendants had re-surfaced and resumed their infringing activities under a new tradename and new trademarks, namely, Pinconn, Pinconn Hardware Factory, and Dongguan Fenggang Pinconn Hardware Factory (collectively "Pinconn") . . . ." *Id.* Then, on October 18, Pinconn participated as an exhibiting vendor at the Las Vegas International Fasteners Expo. PEM served a copy of the complaint in the instant action on Pinconn at its trade show booth. Also, PEM's counsel hand-delivered a copy of the Pennsylvania court's preliminary injunction order, and "informed and explained to Pinconn how it was bound by, but in violation of, the PI Order."[1] *Id.* at 3. Counsel also observed and photographed samples of products distributed by Pinconn and evidence that those products infringe PEM's trademarks.

---

1 PEM had previously attempted to amend the preliminary injunction order specifically to prevent Pinconn's participation in the Las Vegas expo. In denying that request, the Pennsylvania court indicated that the existing order was already broad enough to reach Pinconn's activities: "To the extent Pinconn is a related company acting in concert with Pemco, the March 9 Order would prohibit Pinconn from violating Plaintiff's trademarks or patents, or operating any associated website in violation of that order."

Subsequently, PEM discovered that Pinconn was registered to appear at another trade show in Minneapolis on November 8 and 9, 2017. With that knowledge, PEM petitioned the Pennsylvania court for further relief. On November 7, the court granted an emergency motion to enforce the preliminary injunction order against Pinconn, holding the Pinconn defendants in contempt of court. Mem. Op., *Penn Eng'g v. Pemco*, No. 2:15-cv-6277-GJP (E.D. Pa. Nov. 7, 2017), ECF No. 21. In its order, the court held:

> Pinconn is in contempt of the Court's March 9, 2016 Preliminary Injunction Order. That Order was validly issued by this Court, and Pinconn knew of it. Counsel stated that he previously emailed to Pinconn a copy of the Preliminary Injunction at julia@pinconn.com and pemco@163.com, and gave copies of the Order and all previously-filed pleadings from this case to Ms. Li at the IFE trade show. Based on the evidence provided, it is clear that Pinconn is the same entity as Pemco under a different name or is acting in concert with Pemco. Pinconn's conduct violates the Preliminary Injunction.

During the preceding events, upon learning of Pinconn's participation in the Las Vegas trade show, PEM filed the instant action in the District of Nevada. (Compl., ECF No. 1.) On November 14, 2017, the Clerk of Court entered default against Pinconn. (Clerk's Entry of Default, ECF No. 10.) PEM now moves the Court for a default judgment, including a permanent injunction and an award of statutory damages. (Mot. Default, ECF No. 12.)

## II. LEGAL STANDARDS

Obtaining default judgment is a two-step process under Rule 55. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the clerk must enter a party's default. FED. R. CIV. P. 55(a). The party seeking the default must then petition the court for a default judgment. *Id.* at 55(b)(2). "A grant or denial of a motion for the entry of default judgment is within the discretion of the court." *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956). A court may, "for good cause shown," set aside an entry of default. *See McMillen v. J.C. Penney Co.*, 205 F.R.D. 557, 558 (D. Nev. 2002). Default judgments are generally disfavored, so courts should attempt to

resolve motions for default judgment to encourage a decision on the merits. *See id.* (citing *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001)).

In order for a court to determine whether to "exercise its discretion to enter a default [judgment]," the court should consider seven factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* (citing *Eitel*, 782 F.2d at 1471–72). "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F. R. D. 431, 432 (C. D. Cal. 1999). Upon entry of default, all well-pled facts in the complaint are taken as true, except those relating to the amount of damages. *TeleVideo Sys. , Inc. v. Heidenthal*, 826 F. 2d 915, 917–18 (9th Cir. 1987).

### III. ANALYSIS

The Court will grant the motion and enter a default judgment against Pinconn. The complaint is sufficient, and if the allegations are true, it is highly likely that Pinconn has infringed and will continue to infringe PEM's marks and patents in the absence of a considerable deterrent. Although a preliminary injunction order in the Eastern District of Pennsylvania currently protects PEM's interests, Pinconn has already shown a willingness to violate that order and has been held in contempt of it. There is also no indication that Pinconn's default was due to excusable neglect. Furthermore, a judgment will provide finality to these proceedings, permitting PEM to conclude the litigation of this case and forcing Pinconn to appeal or forfeit the cause.

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). PEM seeks relief in two forms: a permanent injunction

and statutory damages in the amount of $14 million. With respect to the first form, the Ninth Circuit has opined that "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F. 2d 1175, 1180 (9th Cir. 1988). Moreover, Pinconn's efforts to evade the Pennsylvania court's preliminary injunction order by changing its tradenames and domain name, as well as its continued presence at trade shows notwithstanding the injunction, suggest a high likelihood that Pinconn will persist in its infringing activities in the future. Thus, a permanent injunction is warranted.

With respect to the request for statutory damages, $14 million is a large sum of money which, on its face, would tend to weigh against granting a default judgment. The amount PEM seeks is based on the maximum statutory damages available for the alleged willful counterfeiting of seven marks per type of goods sold. *See* 15 U.S.C. § 1117(c) (where plaintiff elects to recover statutory damages, and "if the court finds that the use of the counterfeit mark was willful," the court may award "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just"). PEM justifies its request by pointing to Pinconn's refusal to participate in this case and the egregious nature of the counterfeiting. The Court agrees. First, because Pinconn has declined to appear or defend in this action, PEM is unable to discover the precise extent of Pinconn's infringing activities and thus cannot accurately calculate its actual damages. *See Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008) (stating that "statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed"). Also, PEM has presented persuasive evidence of willful counterfeiting, including, as noted above, Pinconn's active evasion and continued violation of the Pennsylvania court's preliminary injunction order. Pinconn's persistent counterfeiting despite a federal court

injunction strongly indicates that a significant deterrent is necessary to stem future infringement. For these reasons, the Court finds an award of the maximum statutory damages is appropriate.

Therefore, the Court will grant the motion in its entirety.

## CONCLUSION

IT IS HEREBY ORDERED that the motion for default judgment (ECF No. 12) is GRANTED. PEM shall have thirty days from this order's entry to file a proposed permanent injunction order for the Court's review and approval.

IT IS SO ORDERED.

_____
ROBERT C. JONES
United States District Judge
June 15, 2018